J-S04001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAHMIR D. BANKS | : | |
| | : | |
| Appellant | : | No. 1443 EDA 2023 |

Appeal from the Judgment of Sentence Entered April 21, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005193-2021

BEFORE:  BOWES, J., STABILE, J., and LANE, J.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 12, 2024**

Tahmir D. Banks appeals from the aggregate judgment of sentence of twenty-one to forty-two years of incarceration following his guilty plea to third-degree murder and carrying a firearm without a license.  We affirm.

We glean the following from the certified record.  On March 30, 2020, shortly after midnight, Appellant boarded a Southeast Pennsylvania Transportation Authority ("SEPTA") train in Philadelphia with three other men.  Appellant sat down while his friends took turns slapping Nicholas Troxell, who had been sleeping on the train.  Appellant and his friends did not know Mr. Troxell.  When Mr. Troxell awoke, he chased all four individuals into another train car.  Several minutes later, Appellant and his compatriots disembarked the train while Mr. Troxell remained.  Almost immediately, Appellant and one of the other men reapproached the train car, purportedly to retrieve a marijuana blunt that Appellant had dropped.  Instead of entering the car,

Appellant stood on the platform and shot Mr. Troxell once in the head. He then fled on foot without retrieving the blunt. These events were captured by surveillance video. Mr. Troxell died from the gunshot wound.

Appellant was identified as the shooter through the surveillance footage and later confessed to shooting Mr. Troxell. He claimed he was high on Xanax and that the shooting was provoked. Specifically, Appellant averred that Mr. Troxell had stated that he had a needle and had been diagnosed with AIDS. Therefore, when Appellant returned to the train car to retrieve the blunt, he shot Mr. Troxell to avoid being stabbed with a needle. However, just prior to the shooting, the video portrayed Mr. Troxell as unarmed and "no words [we]re exchanged" between Mr. Troxell and Appellant. *See* N.T. Plea, 2/21/23, at 15.

Appellant was charged with first-degree murder, carrying a firearm without a license, carrying a firearm in public in Philadelphia, possession of an instrument of crime, obstruction, recklessly endangering another person, and tampering. On February 21, 2023, he pled guilty to third-degree murder and carrying a firearm without a license. Sentencing was deferred for the preparation of a presentence investigation ("PSI") report and mental health evaluation. Ultimately, the court sentenced Appellant to consecutive terms of incarceration for his convictions, twenty to forty years for third-degree murder and one to two years for the firearms violation. The court denied Appellant's post-sentence motion.

This timely filed notice of appeal followed. Appellant filed a Pa.R.A.P. 1925(b) statement as directed, and the trial court authored a Rule 1925(a) opinion. Appellant presents a single issue on appeal:

> Did the sentencing court abuse its discretion in sentencing Appellant to a maximum sentence for third-degree murder and a consecutive one to two year sentence for violation of the Uniform Firearms Act § 6106 with the third-degree murder sentence also in the aggravated range when there was at least some provocation by [Mr. Troxell], when Appellant had no other prior convictions, and when Appellant presented significant mitigation and family and community support meaning that a maximum and consecutive sentence beyond that recommended by the Commonwealth did not give adequate consideration to Appellant's difficult background (including a broken family, mental health issues, and drug usage), generally good character, and potential for rehabilitation?

Appellant's brief at 4 (unnecessary capitalization omitted).

Appellant challenges the discretionary aspects of his sentence. In that regard, he must first invoke our jurisdiction by (1) timely filing a notice of appeal, (2) preserving the precise challenge in the trial court, (3) including a Pa.R.A.P. 2119(f) statement in his appellate brief, and (4) raising "a substantial question that the sentence appealed from is not appropriate under the Sentencing Code." *Commonwealth v. Salter*, 290 A.3d 741, 748 (Pa.Super. 2023) (cleaned up).

Appellant has satisfied the first three requirements. As to the substantial question, Appellant contends that the court did not adequately consider his mitigating circumstances and that his sentence is excessive because the court imposed consecutive sentences and the maximum term of

incarceration allowable by statute for third-degree murder. *See* Appellant's brief at 11-12. For purposes of this appeal, we will assume that this constitutes a substantial question. *See Commonwealth v. Swope*, 123 A.3d 333, 339 (Pa.Super. 2015) (noting that "prior decisions from this Court involving whether a substantial question has been raised by claims that the sentencing court 'failed to consider' or 'failed to adequately consider' sentencing factors has been less than a model of clarity and consistency[,]" and that while "a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review[,] . . . an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question" (cleaned up)).

It is well-settled that "[s]entencing is a matter vested in the sound discretion of the sentencing judge[.]" *Commonwealth v. Glawinski*, ___ A.3d ___, 2024 WL 463964, at *3 (cleaned up). Therefore, our standard of review "is very narrow" and we will reverse a sentence only where "the appellant [establishes], by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision." *Id*. (cleaned up). Finally, we have consistently held that "[w]here the trial court is informed by a PSI, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed."

J-S04001-24

***Commonwealth v. Torres***, 303 A.3d 1058, 1065 (Pa.Super. 2023) (cleaned up).

Appellant argues that his sentence was excessive, singularly focused on retribution, and did not give adequate weight to Appellant's mitigating factors, including his zero prior record score, troubled background, and potential for rehabilitation. ***See*** Appellant's brief at 11-12. As mitigating factors, Appellant maintains that he was provoked and under the influence at the time of the shooting, and he thereafter expressed remorse at the sentencing hearing. ***Id***. at 13.

In its Rule 1925(a) opinion, the trial court reiterated that it considered Appellant's PSI and mental health reports before imposing standard-range sentences.[1] ***See*** Trial Court Opinion, 7/14/23, at 5; ***see also*** N.T. Sentencing, 4/21/23, at 8-12 (detailing the content of the reports). However, the court explained in its opinion that it ultimately placed greater weight on the gravity of the offense and protection of the public, "given the threat [Appellant's] actions posed to the community at large when he shot [Mr. Troxell] in the head with an illegal firearm on public transit, scaring and possibly traumatizing at least half a dozen other commuters present on the elevated train." Trial Court Opinion, 7/14/23, at 6. The court continued:

---

[1] The sentencing guidelines for third-degree murder with the deadly weapon enhancement provided for a minimum sentence in the standard range of ninety months to the statutory maximum length of a minimum sentence, *i.e.*, twenty years. As for the firearms violation, the standard range was twelve to twenty-four months.

- 5 -

[Appellant] and his friends instigated the conflict when they surrounded [Mr. Troxell] and slapped him repeatedly as he was dozing off in his seat. [He] then got up and followed [Appellant] and his friends until they changed train cars. [Appellant] and his friends got off the train at the next stop, but [Appellant] chose to return to the door of [Mr. Troxell's] train car in an attempt to retrieve a blunt that he had dropped during the initial conflict. Without fully reentering the train, [he] pulled a gun from his pocket, aimed it directly at [Mr. Troxell]'s head, and fired a single shot, killing [Mr. Troxell], instead of trying to de-escalate the situation by retreating, warning [Mr. Troxell], or shooting into the air.

Riders of SEPTA, . . . depend on the train to be a reliable and safe way to travel around the city, not a place where innocent people are at risk of harassment, violence, and in this case, death. [Appellant] killed a complete stranger and admitted he committed this crime entirely impulsively. After pleading guilty, [he] failed to accept full responsibility, attempting to justify his behavior by saying, "If [Mr. Troxell] never followed me, he would never be in this predicament." N.T. 4/21/23 at 48-49.

[Appellant]'s actions have had a devastating impact on the decedent's family and community. The decedent's mother, daughter, and a family friend were present at sentencing but were too traumatized to address [the c]ourt. The Assistant District Attorney shared . . . how the family has not been the same since the incident, including the decedent's seven-year-old grand-daughter who "regularly inquires for [her] pop-pop." N.T. 4/21/23 at 19.

*Id*. at 6 (some citations omitted).

Our review of the record confirms that the trial court considered all necessary factors before imposing sentence. The trial court reviewed the PSI and mental health reports and gave Appellant credit for his positive contributions to society prior to the shooting. However, given the seriousness of Appellant's conduct that day, the court imposed what it believed to be a justified sentence. *See* N.T. Sentencing, 4/21/23, at 52-23 ("I am giving you

credit for your life up until that point. . . [but], your behavior that day justifies this sentence.  It is . . . also the seriousness of what you did that day, not other days, but how you approached this situation.").  We discern no abuse of discretion on the trial court's part in imposing Appellant's aggregate sentence.  Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date:  4/12/2024